UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-62181-RAR

**CHANEL, INC.**,

        Plaintiff,

v.

**24/7 GO LIVE**, *an unincorporated association*,

        Defendant.
_____/

## ORDER GRANTING MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

**THIS CAUSE** comes before the Court upon Plaintiff's *Ex Parte* Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction ("Motion"), [ECF No. 5], filed on November 16, 2023. Plaintiff alleges Defendant 24/7 Go Live, an unincorporated association ("Defendant"), infringes on Plaintiff's trademarks and promotes and sells counterfeits of Plaintiff's branded goods through virtual, live shopping events streamed on its Facebook page, which operates under the name 24/7 Go Live ("Seller Platform"). Among other requests, Plaintiff asks the Court to enjoin Defendant from producing or selling goods that infringe its trademarks.

On November 17, 2023, the Court issued an Order ("Temporary Restraining Order"), [ECF No. 6], granting Plaintiff's *Ex Parte* Expedited Motion for Entry of Temporary Restraining Order. Defendant was served with relevant case documents on November 19, 2023. *See* Certificate of Service, [ECF No. 9]. Defendant has neither formally responded to the Motion, made any filings in this case, nor appeared in this matter either individually or through counsel. A hearing was held on December 1, 2023, regarding the Motion ("Hearing"), [ECF No. 11]. The Court having carefully considered the Motion and pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and this Court's inherent authority, Plaintiff's Motion, [ECF No. 5], is **GRANTED** as set forth herein.

## INTRODUCTION

Plaintiff raises five claims for relief: (1) trademark infringement under section 32 of the Lanham Act; (2) trademark counterfeiting under section 32 of the Lanham Act; (3) false designation of origin under section 43(a) of the Lanham Act; (4) trademark infringement under Florida common law; and (5) unfair competition under Florida common law. *See* Compl., [ECF No. 1] ¶¶ 11–70. Plaintiff alleges Defendant is promoting, advertising, distributing, offering for sale, and selling counterfeit and infringing versions of Plaintiff's branded products within the Southern District of Florida through the Seller Platform. *See generally id.*

Plaintiff alleges Defendant's unlawful activities have caused and will continue to cause irreparable injury because Defendant has (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendant's goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendant's goods and the seller platform marketing and selling those goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of Plaintiff's trademarks. *See generally id*. In the Motion, Plaintiff moves for the issuance of a preliminary injunction against Defendant for violations of the Lanham Act. *See* Mot. at 8–15.

## BACKGROUND[1]

Plaintiff is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office ("Chanel Marks"):

---

[1] The factual background is taken from Plaintiff's Complaint, [ECF No. 1], Plaintiff's Motion, [ECF No. 5], and supporting evidentiary submissions. Plaintiff also attached declarations and an exhibit in support of its Motion, [ECF Nos. 5-1–5-4].

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| CHANEL | 0,902,190 | November 10, 1970 | IC 014 - Bracelets, Pins, and Earrings |
| CHANEL | 1,177,400 | November 10, 1981 | IC 025 - Hats, Shawls and Belts |
| (CC logo) | 1,241,264 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Tee-Shirts, Coats, Raincoats, Scarves, Shoes and Boots |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |
| (CC logo) | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| (CC logo) | 1,501,898 | August 30, 1988 | IC 006 - Keychains<br>IC 014 - Costume Jewelry<br>IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 - Brooches and Buttons for Clothing |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| (CC logo) | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| J12 | 2,559,772 | April 9, 2002 | IC 014 - Timepieces; namely, Watches, and Parts Thereof |
| RUE CAMBON | 2,964,843 | July 5, 2005 | IC 018 - Handbags |
| (CC logo) | 3,025,936 | December 13, 2005 | IC 009 - Eyeglass Frames, Sunglasses<br>IC 025 - Gloves, Swimwear<br>IC 026 - Hair Accessories, namely, Barrettes |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| CHANEL | 3,134,695 | August 29, 2006 | IC 009 - Eyeglass Frames, Sunglasses, Sunglass Parts, Cases For Spectacles and Sunglasses |

|  |  |  | IC 025 - Swimwear, Stockings<br>IC 026 - Hair Accessories, Namely, Barrettes<br>IC 028 - Bags Specially Adopted For Sports Equipment, Tennis Rackets, Tennis Balls, Tennis Racket Covers |
|---|---|---|---|
| N°5 | 3,149,203 | September 26, 2006 | IC 014 - Jewelry |
| CHANEL | 3,890,159 | December 14, 2010 | IC 009 - Cases for Telephones<br>IC 018 - Key Cases |
| ⊂⊃ | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers and Cell Phones<br>IC 018 - Key Cases |
| ⊂⊃ | 4,241,822 | November 13, 2012 | IC 025 - For Clothing, namely, Coats, Jackets, Dresses, Tops, Blouses, Sweaters, Cardigans, Skirts, Vests, Pants, Jeans, Belts, Swim Wear, Pareos, Hats, Scarves, Ties, Gloves, Footwear, Hosiery |
| CHANEL | 5,100,448 | December 13, 2016 | IC 020 - Pillows |
| CHANEL | 5,166,441 | March 21, 2017 | IC 024 - Travelling blankets |
| ⊂⊃ | 5,280,486 | September 5, 2017 | IC 020 - Pillows |
|  | 5,912,273 | November 19, 2019 | IC 018 - Handbags |

*See* Declaration of Elizabeth Han ("Han Decl."), [ECF No. 5-1] ¶ 4. The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* ¶¶ 4–5.

Defendant, by streaming virtual, live shopping events on its Facebook page, which operates under the name 24/7 Go Live ("Seller Platform"), has advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Chanel Marks. *See* Han Decl. ¶¶ 9–11; Declaration of Stephen M. Gaffigan ("Gaffigan Decl."), [ECF No. 5-2] ¶ 2.

Plaintiff has submitted sufficient evidence showing that Defendant has infringed at least one or more of the Chanel Marks. *See* Han Decl. ¶¶ 4, 10–11; Compl. Comp. Ex. 2, [ECF No. 1-3]; Declaration of Eric Rosaler ("Rosaler Decl."), [ECF No. 5-3] ¶ 4; Rosaler Decl. Comp. Ex. 1, [ECF

No. 5-4]. Defendant is not currently, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. *See* Han Decl. ¶¶ 9–11.

Plaintiff's counsel hired AED Investigations, Inc., a licensed private investigative firm to investigate and document the sale of counterfeit and infringing versions of Plaintiff's goods by the Defendant operating via the Seller Platform. Rosaler Decl. ¶ 4. AED Investigations, Inc. accessed Defendant's Seller Platform, watched recordings of live videos published by Defendant to Defendant's Seller Platform, and observed Defendant's members operating under various seller identities displaying, promoting, and offering for sale goods bearing Chanel's trademarks. Rosaler Decl. ¶ 4. AED Investigations, Inc. exchanged direct messages via Messenger, Facebook's private messaging application, with certain members identified in Defendant's posts; placed orders for the purchase of products bearing counterfeits and infringements of one or more of Chanel's trademarks at issue in this action; and requested the product to be shipped to an address in the Southern District of Florida. *Id.* The order was processed electronically and following the submission of the orders, the firm finalized payment for the products ordered to the member sellers' financial account. *Id.* At the conclusion of the process, the detailed web pages the firm captured and downloaded reflecting the ordered products were sent to Chanel's counsel. *Id.*

Additionally, Plaintiff's counsel's office, Stephen M. Gaffigan, P.A. ("SMGPA"), documented the suspected sale of counterfeit versions of Plaintiff's branded products by Defendant. Gaffigan Decl. ¶ 2; Compl. Comp. Ex. 2. Specifically, SMGPA captured and downloaded web pages showing the various Chanel-branded items offered for sale via Defendant's Seller Platform and provided the captures to Chanel thereafter. Compl. Comp. Ex. 2. Plaintiff's representative reviewed and visually inspected the web page captures reflecting the products offered for sale

bearing the Chanel Marks by the Defendant via the Seller Platform and determined the products were non-genuine, unauthorized versions of the Plaintiff's products. *See* Han Decl. ¶¶ 10–11.

## LEGAL STANDARD

Plaintiff has filed claims under the Lanham Act and Florida common law. *See generally* Compl. The Lanham Act provides that the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Injunctive relief is also available for a violation of 15 U.S.C. § 1114(1)(a). *See id.* § 1116(d)(1)(A). To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## ANALYSIS

The declarations Plaintiff submitted in support of its Motion support the following conclusions of law:

A.    Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendant's advertisement, promotion, sales, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Chanel Marks, and that the products Defendant is selling and promoting for sale are copies of Plaintiff's products that bear copies of the Chanel Marks.

  B. Because of the infringement of the Chanel Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Motion, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not:

  1. Defendant owns or controls the Internet-based Seller Platform, which advertises, promotes, offers for sale, and sells products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights; and

  2. There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

  C. The balance of potential harm to Defendant in restraining its trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued.

  D. The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by counterfeit and infringing goods that are palmed off as Plaintiff's genuine goods.

## **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. §1116, Federal Rule of Civil Procedure 65, 28 U.S.C. §1651(a), and the Court's inherent authority, Plaintiff's Motion, [ECF No. 5], is **GRANTED**. A preliminary injunction is entered as follows:

(1) Defendant, its member sellers, officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined until further Order of the Court:

  a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Chanel Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

  b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Chanel Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Chanel Marks, or any confusingly similar trademarks.

(2) Defendant, its member sellers, officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further order of the Court, the use of the Chanel Marks, or any confusingly similar trademarks, on or in connection with all Internet seller platforms owned, operated, or controlled by them, including the Seller Platform.

(3) Defendant, its member sellers, officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, to the extent not already done, their unlawful counterfeiting activities conducted through Defendant's Seller Platform or any other seller platform.

(4) Defendant shall immediately, to the extent not already done, identify to Plaintiff, to the extent not already done, all member sellers who currently and/or formerly comprised Defendant's unincorporated association, as well as identify these sellers' locations.

(5) Defendant shall immediately, to the extent not already done, identify to Plaintiff, to the extent not already done, (i) the location of their member sellers, (ii) the location of the goods bearing the Chanel Marks being offered for sale or sold by each member seller, and (iii) the goods in their inventory, possession, custody, or control bearing one or more of the Chanel Marks.

(6) Defendant and its agents shall immediately, to the extent not already done, surrender to the Court the counterfeit goods in their inventory, possession, custody, or control bearing one or more of the Chanel Marks during the pendency of this action, or until further order of the Court.

(7) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further order of the Court, the use of the Chanel Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to websites registered, owned, or operated by Defendant, including the Internet websites operating under the Seller Platform.

(8) Defendant shall not transfer ownership of the Seller Platform during the pendency of this action, or until further order of the Court.

(9) Defendant and its agents shall continue to preserve copies of all computer files relating to the use of the Seller Platform and shall take all steps necessary to retrieve computer files relating to the use of the Seller Platform that may have been deleted before the entry of this Order.

(10) Upon Plaintiff's request, the privacy protection service for any seller platform for which Defendant and/or the member sellers uses such privacy protection service to conceal their

identity and contact information is ordered to disclose to Plaintiff, to the extent not already done, their true identities and contact information.

(11) Upon Plaintiff's request, any Internet website operator and/or administrator who is provided with notice of this Order, including but not limited to Meta Platforms, Inc., the company who owns and operates Facebook, shall immediately, to the extent not already done, cease facilitating access during the pendency of this action or until further order of the Court, from the multiple platforms, any and all accounts, listings, and associated images of the products bearing and/or using counterfeits and/or infringements of the Chanel Marks via the Seller Platform, and any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks linked to the same sellers or linked to any other alias seller member names being used and/or controlled by Defendants to offer for sale goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

(12) Upon Plaintiff's request, any Internet website operator and/or administrator that is provided with notice of this Order, including but not limited to Meta Platforms, Inc., shall, to the extent not already done, cease hosting, facilitating access to, or providing any supporting service to any and all seller member accounts owned and operated by Defendant, its member sellers, and all persons in active concert or participation with Defendant.

(13) This Order shall apply to the Seller Platform, associated members, agents, and any other platform and/or seller member being used by Defendant for the purpose of counterfeiting the Chanel Marks at issue in this action and/or unfairly competing with Plaintiff.

(14) As a matter of law, this Order shall no longer apply to Defendant or associated seller platform that is later dismissed from this action or as to those entities or individuals which Plaintiff has withdrawn its request for a preliminary injunction.

(15) Under 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of $10,000.00, as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(16) This Preliminary Injunction shall remain in effect during the pendency of this action, or until further date as set by the Court or stipulated by the parties.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of December, 2023.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**